**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SANJIV NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-02921-TWP-MG |
| | ) | |
| INDIANAPOLIS FIRE DEPARTMENT, and | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants the Indianapolis Fire Department (the "IFD") and the City of Indianapolis (Indiana) (the "City") (collectively, "Defendants") (Filing No. 66). Following his termination from the IFD, Plaintiff Sanjiv Neal ("Neal") initiated this action alleging violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983 ("Section 1983"), and asserting a hostile work environment claim and several state law tort claims. For the following reasons, the Defendants' Motion is **granted**.

## I.   BACKGROUND

### A.   Admissibility of Evidence

As an initial matter, the Court will address the admissibility of the parties' evidence. "Admissibility is a threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); Federal Rule of Civil Procedure 56(c). Both Neal and the Defendants have submitted exhibits without authenticating them as required by Federal Rule of Evidence 901. Unauthenticated evidence is inadmissible and may not be considered in evaluating a motion for summary judgment.

*See Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) (concluding report introduced without authenticating affidavit was inadmissible and could not be considered on summary judgment); *see, e.g.*, *Schmutte v. Resort Condos. Int'l, L.L.C.*, No. 05-CV-311, 2006 WL 3462656, at *5 (S.D. Ind. Nov. 29, 2006) (citing *United States v. Kelly*, 14 F.3d 1169, 1175 (7th Cir. 1994)); *Bennett v. Gates*, No. No. 09-cv-00647, 2010 WL 4668367, at *3–4 (S.D. Ind. Nov. 9, 2010) (disregarding unauthenticated evidence on summary judgment).

Defendants did not authenticate fifteen of their exhibits: Neal's injury report (Filing No. 68-4); his Worker's Compensation Patient Status Report (Filing No. 68-5); four Fit-for-Duty Evaluations (Filing No. 68-13; Filing No. 68-14; Filing No. 68-15; Filing No. 68-16); Neal's IFD discipline records (Filing No. 68-17); his IFD pre-employment packet (Filing No. 68-18); the IFD's Private job description (Filing No. 68-19)[1]; a letter to the IFD dated November 5, 2019 (Filing No. 68-21); four letters from the IFD to Neal prior to his termination (Filing No. 68-22; Filing No. 68-23; Filing No. 68-24; Filing No. 68-25); and the Civilian Merit Board Findings of Fact and Conclusions of Law (Filing No. 68-26). These unauthenticated exhibits are inadmissible.

Neal filed only one exhibit—an "Expert Witness Questionaire [*sic*]" from Dr. Darren L. Higginbotham ("Dr. Higginbotham") (Filing No. 69 at 23–29), which is likewise unauthenticated and inadmissible. *Scott*, 346 F.3d at 759 ("[The expert] report was introduced into the record without any supporting affidavit verifying its authenticity and is therefore inadmissible and cannot

---

[1] The IFD Private job description is attached to Defendants' Designation of Evidence in Support of Summary Judgment as Exhibit 19 (Filing No. 68-19). None of the affidavits offered by Defendants attempt to authenticate the job description. However, the Affidavit of Timothy Robinson refers to a "limited duty letter," and states the letter is "attached to Defendant's Designation of Evidence as *exhibit 19*" (Filing No. 68-27 at 2, ¶ 13 (emphasis added)). The affidavit's reference to "exhibit 19" was evidently made in error and should have been a reference to exhibit 20 (Filing No. 68-20). Exhibit 20 is a document titled "Limited Duty" (Filing No. 68-20). To be sure, in Defendants' Brief in Support of Summary Judgment and Reply in Support of Defendants' Motion for Summary Judgment, Defendants cite the limited duty letter sent to Neal as exhibit 20 (Filing No. 67 at 3; Filing No. 74 at 2). Accordingly, the Court will consider exhibit 20—the limited duty letter—as authentic and admissible, but not exhibit 19—the job description.

be considered for purposes of summary judgment."); *see Est. of Williams v. Ind. State Police*, 26 F. Supp. 3d 824, 838 (S.D. Ind. 2014) (disregarding unauthenticated expert report and rejecting belated attempt to cure authenticity defect on surreply) (citing *Scott*, 346 F.3d at 759). Neal also frequently cites allegations of his unverified Amended Complaint in responding to Defendants' Motion, but those allegations are not admissible evidence and will not be considered in resolving Defendants' Motion. *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020) (restating "the general principle that a plaintiff may not rely on mere allegations or denials in his complaint when opposing a properly supported motion for summary judgment"); *see* S.D. Ind. L.R. 56-1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence.").

**B.**     **Factual Background**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Neal as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**Neal's Employment and the IFD's Policies**

Neal joined the IFD on May 13, 2013, as a firefighter with a ranking of Private (Filing No. 68-3 at 12, 14; Filing No. 68-27 at 1, ¶ 6). The IFD issued him an IFD email address when he was hired (Filing No. 68-3 at 16–17). While on full duty, Neal was scheduled to work a twenty-four hour shift every three days (Filing No. 68-3 at 16).

Throughout Neal's employment, the IFD maintained General Orders ("General Orders") with which firefighters were required to comply (Filing No. 68-28 at 2–3, ¶¶ 6–7, 9). Violations of the General Orders could result in discipline, including suspension and termination (*id.* at 2, ¶ 8). Defendants identified seven of those General Orders in support of their Motion.

General Order 1.07 (Filing No. 68-6) requires IFD firefighters to notify the IFD of any changes to their name, address, telephone number, or driver's license status within seventy-two hours of the change.  General Order 1.34 (Filing No. 68-7) requires firefighters to check their email each day while on duty and each week if off duty "for an extended period."

General Order 2.08 (Filing No. 68-8) governs attendance.  It requires firefighters to report at 8:00 a.m. each scheduled day of duty and requires IFD officers to take rollcall at 8:00 a.m. every day "to ensure firefighters under their command are present and prepared to begin the duty day." (*Id.* § II(E)(i).)  It requires firefighters on duty to "be at their assigned duty station at all times except . . . [w]hen detailed elsewhere by a superior officer" or "[w]hen dispatched elsewhere by Fire Communications".  (*Id.* § II(D).)  General Order 2.08 provides that firefighters who will be late or absent for duty must notify a superior officer before their shift or period of absence and that "[f]irefighters absent from their assigned station without being excused by a superior officer shall be considered absent without leave and subject to disciplinary action".  (*Id.* §§ II(B)–(C).)  General Order 2.18 (Filing No. 68-9) describes assignments to "limited duty," which are made when a firefighter is "unable to perform [his] regular job duties due to sickness, accident, and/or injury, or temporary disability but [is able to] perform limited duties within the IFD."  (*Id.* § II.)

General Order 6.09 (Filing No. 68-10) provides that "an individual's mental, emotional, and/or physical fitness to perform the duties of a firefighter" is determined through a Fitness for Duty evaluation ("Fitness for Duty Evaluation"), which "may include physical and/or psychological exams administered by Department[-]approved accredited medical professionals." (*Id.*)  General Order 6.09 requires firefighters to "report as ordered to [an] approved medical professional [and] participate in the components of the Fitness for Duty Evaluation."  (*Id.* § III(D).)

It further provides that "[f]ailure to report as ordered or failure to participate in the Fitness for Duty testing procedures may result in progressive discipline. " (*Id.*)

General Orders 8.01 and 8.03 (Filing No. 68-11; Filing No. 68-12) describe the procedures by which IFD officers may use progressive discipline and the IFD's procedures for reviewing and holding hearings on disciplinary matters.

### Neal's Disability, Discipline, and Termination

During his employment with IFD, Neal suffered from anxiety, depression, and post-traumatic stress disorder ("PTSD") (Filing No. 68-3 at 22).  These conditions either originated or began deepening when he first joined the IFD and attended the IFD's training academy in 2013. (*Id.* at 17.)  At the academy, he was bullied and ostracized by other trainees and his superiors.  (*Id.* at 39–40, 44–46.)  This abuse continued even after he completed the academy.  (*Id.*)

On August 2, 2018, Neal was physically injured during a training exercise (Filing No. 68-3 at 18).  As a result, he could not immediately return to work (Filing No. 68-3 at 18–19).  On January 22, 2019, Neal attended a Fitness for Duty Evaluation (Filing No. 68-27 at 2, ¶ 8–9).  The IFD's physician made inflammatory comments during the evaluation, so Neal left the evaluation early (Filing No. 68-3 at 40).  Neal notified IFD Deputy Chief of Administration Timothy Robinson ("Chief Robinson") that he had ended the evaluation early. (*Id.* at 40–41.) Chief Robinson suspended Neal for twenty-four hours for failing to complete the Fitness for Duty Evaluation.  (Filing No. 68-27 at 2, ¶ 9.)

Neal was deemed unfit to return to full duty due to both his physical injuries and his psychological conditions, so Neal was placed on limited duty (Filing No. 68-3 at 20, 33). He began his limited duty on June 17, 2019 (Filing No. 68-27 at 2, ¶ 12). The IFD sent Neal a letter describing his limited duty, (Filing No. 68-27 at 2, ¶ 13; Filing No. 68-20), which stated that employees on limited duty are scheduled to work from 8:00 a.m. to 4:30 p.m., Monday through

Friday, and that a failure to report at assigned locations would result in the employee being considered absent without leave (Filing No. 68-20).

Neal experienced difficulties with his anxiety, depression, and PTSD while on limited duty (Filing No. 68-3 at 20). Yet he never requested any type of accommodation during his employment with the IFD (Filing No. 68-27 at 4, ¶ 30; Filing No. 68-3 at 32–33). Neal does not recall when, but he took leave under the Family and Medical Leave Act ("FMLA") on one occasion to assist his ailing mother (Filing No. 68-3 at 35).

Neal's depression caused him to be late for or miss work multiple days while on limited duty (Filing No. 68-3 at 36). On August 13, 2019, he failed to report for duty without notifying any of his superior officers (Filing No. 68-27 at 2, ¶ 15). The next day, Chief Robinson suspended him for forty-eight hours and emailed Neal about the suspension. (*Id.* at 2, ¶ 16.) All of Chief Robinson's emails to Neal were sent to Neal's official IFD email address. (*Id.* at 3, ¶ 27.) Neal was scheduled to return to work on August 22, 2019, but again failed to report without notice. (*Id.* at 2, ¶ 16.) Chief Robinson suspended Neal for one hundred twenty hours on August 27, 2019. On September 6, 2019, Chief Robinson notified Neal that he would be recommending his termination.

Around that time, Neal spoke with Chief Robinson and IFD Chief Abernathy ("Chief Abernathy") about the difficulties caused by his disability. (Filing No. 68-3 at 20–21, 37). In response, Chief Abernathy recommended that Neal seek inpatient treatment at a facility in Florida called Florida House Experience, ("Florida House ), and Neal received time off to seek treatment there (Filing No. 68-3 at 27, 37, 47, 49). Around the time Neal was in treatment, he changed addresses. Although Neal gave Florida House his new address and believed that Florida House would relay that information to the IFD, he did not directly notify the IFD of the change (Filing No. 68-3 at 30–31).

Neal completed treatment with Florida House in early November 2019 and returned to Indianapolis (Filing No. 68-3 at 27–28). Florida House recommended that Neal seek additional treatment at a facility in Indianapolis, but when Neal reached out to the recommended facility, he learned the facility only offered prisoner re-entry programs, so Neal was "turned away" (Filing No. 68-3 at 29–30).

IFD learned that Neal completed his treatment both through a telephone call from Neal to Chief Abernathy and through a letter from Florida House to the IFD.  (Filing No. 68-3 at 28–29; Filing No. 68-27 at 3, ¶ 19).)  However, after returning from Florida, Neal never reported back to work and never contacted anyone at the IFD about returning to work. (Filing No. 68-3 at 27, 29.) Chief Robinson emailed Neal instructing him to attend a meeting on December 6, 2019, [2] but Neal did not respond to the message or attend the meeting.  (Filing No. 68-27 at 3, ¶¶ 21–24.) Chief Robinson then sent a letter to Neal notifying him of a one hundred twenty-hour suspension and instructing him to attend a meeting on December 30, 2019. (Filing No. 68-27 at 3, ¶ 24.) But because Neal had not updated his address with IFD, the letter was sent to an outdated address, and Neal did not receive the letter or attend the December 30, 2019 meeting.  (Filing No. 68-27 at 3, ¶ 26.)  Chief Robinson then recommended Neal's termination.  (Filing No. 68-27 at 3, ¶ 27.)  Neal was terminated from the IFD for being absent without leave and failing to maintain his EMT

---

[2] Neal testified at his deposition that he did not receive any emails from Chief Robinson, but Neal also testified that he does not remember whether he was checking his IFD email account at the time. Due to this lack of recollection, and in light of Chief Robinson's affidavit testimony, Neal cannot create a genuine dispute of fact as to whether Chief Robinson emailed Neal at his IFD email address. See *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011) (finding testimony inconclusive, and therefore not sufficient to establish a genuine dispute of material fact, where plaintiff testified that he could not recall when or whether an event occurred); *see also Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002) (plaintiff's affidavit asserting that she did not remember seeing or receiving a brochure did not raise a genuine issue that the brochure was distributed to her in light of the uncontroverted affidavits of two other individuals that indicated the brochure was sent and presumably received).

certification, which was required for his position, effective February 27, 2020. ([Filing No. 68-27 at 4](#), ¶¶ 28-29.)

Neal filed this lawsuit on November 6, 2020, asserting federal claims under the ADA and Rehabilitation Act, and state law claims for wrongful termination, negligent infliction of emotional distress, negligent supervision, and intentional infliction of emotional distress ([Filing No. 1](#)). Neal's Amended Complaint, filed October 15, 2020, asserts claims under the ADA and Rehabilitation Act and the same state law claims, but he added a federal claim under Section 1983. ([Filing No. 40](#))  As of at least March 9, 2022, the City had not received a tort claim notice from Neal or his counsel regarding Neal's state law claims ([Filing No. 68-29 at 2](#), ¶ 7).

## II.  LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*,

476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The Court views the designated evidence in the light most favorable to Neal as the non-moving party and draws all reasonable inferences in his favor. *Bright v. CCA*, No. 10-cv-01690, 2013 WL 6047505, at *3 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* (citation and quotation marks omitted); *see Reed v. Brex, Inc.*, 8 F.4th 569, 578 (7th Cir. 2021) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit." (quotation marks and citations omitted)).

### III.    DISCUSSION

Neal alleges the Defendants discriminated against him on the basis of his mental disability (anxiety, depression, and PTSD), failed to accommodate his disability in violation of Title I of the ADA, and discriminated against him in his use and enjoyment of the IFD's facilities in violation of Title III of the ADA.  He further alleges the Defendants' discrimination and failure to accommodate created a hostile work environment.  He argues that by failing to take affirmative steps to identify and accommodate his disability, the Defendants violated the Rehabilitation Act

and evidenced a widespread practice that violates the constitutional rights of mentally disabled employees under Section 1983. Neal also asserts state law tort claims for wrongful termination, negligent supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress.

Defendants seek summary judgment on Neal's ADA, hostile work environment, and Rehabilitation Act claims because Neal was not "qualified" for his job and because a fire station is not a "place of public accommodation." They contend that Neal cannot show a discriminatory policy, custom, or practice under Section 1983. As for Neal's state law tort claims, Defendants argue they should be dismissed because Neal failed to serve a notice of his tort claims as required by the ITCA. The Court will address Neal's claims in turn.

A.    **ADA Claims**

Neal alleges Defendants violated the ADA by discriminating against him on the basis of his disability, failing to accommodate his disability, and by discriminating against him in his use of a place of public accommodation. Defendants do not dispute that Neal suffered from a "disability" under the ADA but dispute that he is a "qualified individual" entitled to the ADA's protections because he cannot not perform the essential functions of his job. Defendants also dispute that a fire station is a "place of public accommodation" under the ADA.

1.    **Title I Disability Discrimination**

The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); *Equal Emp. Opportunity Comm'n. v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005). To support an ADA claim, a plaintiff must show, "(1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) he suffered from an adverse employment decision because of his

disability." *Pugh v. City of Attica*, 259 F.3d 619, 626 (7th Cir. 2001). To survive a motion for summary judgment, Neal must present evidence that, if believed by a trier of fact, would establish the elements of his claim. *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013).

The parties dispute only the second element—whether Neal was "qualified". Under the ADA, a "qualified" individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 480 (7th Cir. 2017). Neal bears the burden of proving he was "qualified." *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998). Defendants argue regular attendance was an essential function of Neal's job as a firefighter but that he could not perform this function. (Filing No. 67 at 9–11.) Neal responds that regular attendance was not an essential function of his job and that he could have performed the essential functions of his job with accommodation. (Filing No. 69 at 5–9.)

### a. Regular Attendance as an Essential Function

The ADA provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n). "[T]o determine whether a particular duty is an essential function," a court is to consider factors like "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 285 (7th Cir. 2015) (quoting *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th & 22nd Jud. Cirs.*, 601 F.3d 674, 679 (7th Cir. 2010)); *see* 29 C.F.R. § 1630.2(n)(3).

The Seventh Circuit has repeatedly held that "[a]n employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance." *Basden*, 714 F.3d at 1037 (citing *Equal Emp. Opportunity Comm'n v. Yellow Freight*

11

*Sys., Inc.*, 253 F.3d 943, 948–49 (7th Cir. 2001)); *Jovanovic v. In-Sink-Erator*, 201 F.3d 894, 900

(7th Cir. 2000). "[I]n most instances the ADA does not protect persons who have erratic,

unexplained absences, even when those absences are a result of a disability." *Waggoner v. Olin*

*Corp.*, 169 F.3d 481, 484 (7th Cir. 1999).  Although the Seventh Circuit has "not go[ne] so far to

say that regular attendance is an essential function of *every* job . . . [c]ommon sense dictates that

regular attendance is usually an essential function in most every employment setting; if one is not

present, he is usually unable to perform his job." *Jovanovic*, 201 F.3d at 899–900; *see Amadio v.*

*Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) (listing cases in which court found attendance

to be essential job function). "Except in the unusual case where an employee can effectively

perform all work-related duties at home, an employee who does not come to work cannot perform

any of his job functions, essential or otherwise." *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213

(4th Cir. 1994).

Defendants argue regular attendance was an essential function of Neal's job as a firefighter.

The designated evidence supports that in the IFD's judgment, regular attendance is an essential

function of Neal's job as a firefighter.  The IFD issued General Order 2.08 for the express purpose

of "establish[ing] policy concerning reporting for duty and being absent without leave. " ([Filing](#)

[No. 68-8](#) at § I.)  It requires firefighters to notify superiors of any tardiness or absence and subjects

late or absent firefighters to discipline.  (*Id*. §§ II(B)–(C).)  General Order 2.08 also requires IFD

officers to take roll call each morning "to ensure firefighters under their command are present and

prepared to begin the duty day. " (*Id.* § II(E)(i).)  The IFD trains its firefighters on its General

Orders and expects its firefighters to follow them.  ([Filing No. 68-28 at 1](#)–2, ¶¶ 6, 9.)  It is also

undisputed that Neal was assigned to work a consistently scheduled shift (twenty-four hours every

three days) ([Filing No. 68-3 at 16](#)); *see Yellow Freight Sys. Inc.*, 253 F.3d at 949 ("[I]t is undisputed

that Nicosia was a full-time employee and not a casual, temporary, part-time, or substitute employee, nor did he ever have the discretion or the right to decline work when he chose to do so.").

Moreover, common sense provides that a firefighter must be at work to be able to respond to fires and other emergencies. *See Goetz v. City of Springfield*, 699 F. Supp. 2s 1066, 1080 (C.D. Ill. 2010) ("Courts are not prohibited from using common sense.") (citing *Lake v. Neal*, 585 F.3d 1059, 1059 (7th Cir. 2009) (applying "'Duck Test:' "if it walks like a duck, swims like a duck, and quacks like a duck, it's a duck")).  The firefighting profession does not lend itself to remote work. *See, e.g.*, *Hartwell v. Spencer*, 792 Fed. Appx. 687, 692 (11th Cir. 2019) (concluding timely attendance to be an essential function of job as firefighter and EMT based on city procedures, despite lack of written job description); *Rinkenberger v. City of Clearwater*, 44 Fed. Appx. 23, 24–25 (8th Cir. 2002) (finding plaintiff was unable to perform essential functions of job as firefighter due to inability to respond to twenty percent of fire calls and stating "[a]ttendance at work is an essential requirement of the job").

Neal cites two cases from other circuits in which the courts decided regular attendance was not an essential job function.  Both are distinguishable . In *Carmona v. Southwest Airlines Co.*, the plaintiff, Edward Carmona ("Mr. Carmona"), was terminated from his job as a flight attendant with Southwest Airlines ("Southwest") after his disability caused him to miss too many days of work.  604 F.3d 848, 852 (5th Cir. 2010).  In reviewing the District Court's ruling on a motion for judgment as a matter of law, the Fifth Circuit Court of Appeals held that Mr. Carmona had produced enough evidence to convince a reasonable jury that he was "qualified" under the ADA despite his absenteeism. The Fifth Circuit pointed to Southwest's "extremely lenient" attendance policy, which allowed flight attendants to accrue an indefinite number of absences—with or

without advanced notice—and unlimited FMLA leave before receiving any type of discipline. *Carmona*, 604 F.3d at 851. Southwest also frequently granted Mr. Carmona FMLA leave, even though Mr. Carmona could not always give advanced notice of the leave. This flexibility allowed Mr. Carmona to "stay within the bounds of [Southwest's attendance] policy for seven years, despite his irregular attendance, and despite his disability." *Id.* at 860. All of this evidence suggested to the Fifth Circuit that regular attendance was not an essential function of Mr. Carmona's job. Neal presents no similar evidence here. The IFD maintained a strict attendance policy. General Order 2.08 did not permit a firefighter to be tardy or absent even once—with or without advance notice—without being subject to discipline. Indeed, Neal was disciplined after each of his unscheduled absences.  (Filing No. 68-27 at 2–3, ¶¶ 14–18, 21–26.)

In *Fritz v. Mascotech Automotive Systems Group, Inc.*, the plaintiff was terminated from his job as a motor vehicle component designer after his diabetes caused him to be late or absent from work. 914 F. Supp. 1481, 1483–84. The employer moved for summary judgment, arguing the plaintiff was not "qualified " under the ADA because of his tardiness and absences. *Id.* The Eastern District of Michigan denied the defendant's motion because it found the parties raised a genuine issue as to whether the plaintiff could have performed the essential functions of his job with a reasonable accommodation. *Id.* at 1486. But here, as discussed below, Neal has not created a genuine dispute as to whether he could have performed the essential functions of his job even with a reasonable accommodation.

### b.   <u>Ability to Perform Essential Functions with Reasonable Accommodation</u>

Neal does not dispute that his disability, without accommodation, prevented him from coming to work regularly, which the Court has held is an essential function of his job. But he contends he could have performed the essential functions of his job with an accommodation.

Although Neal never requested any accommodation while employed by the IFD, he mentions three possible accommodations in his response brief.

First, Neal argues Defendants could have "adjust[ed] his shifts or work schedule or leaves." (Filing No. 69 at 6–7.)  But he offers no further detail about how his schedule should or could have been adjusted to accommodate his disability and, more importantly, offers no evidence that this type of accommodation would have resolved his absenteeism.  As the Seventh Circuit has noted, "[w]hen an employee is unable to perform the essential function of attending his employment, few, if any, reasonable accommodations exist." *Amadio*, 238 F.3d at 928; *See Corder v. Lucent Techs. Inc.*, 162 F.3d 924, 928 (7th Cir. 1998) ("[T]here was literally nothing in the record to suggest that the future would look different from the past, and Corder's continuing request for an 'unpredictable' amount of leave time as an ongoing accommodation actually contradicted her assertion that she would regularly attend work in the future."); *see also Lileikis v. SBC Ameritech, Inc.*, 84 Fed. Appx. 645, 649–50 (7th Cir. 2003) (concluding plaintiff with depression failed to prove she could perform essential function of regular attendance and rejecting plaintiff's argument that she could "perform the essential functions of her job with an accommodation of part-time work" because "part-time work is not a reasonable accommodation for a full-time job").

Neal spent a month away from work in treatment at Florida House and upon his return to Indianapolis, took several additional (unscheduled) days off of work, yet that leave time did not resolve his absenteeism. Additionally, in his deposition more than a year after his termination, Neal testified that he still did not "feel like he could return to work" (Filing No. 68-3 at 37).  He testified that his anxiety still affected his ability to work because it caused a "fear of people " and "[f]ear of situations," and that his depression and PTSD still prevented him from working because these conditions made it "hard to be around people" (Filing No. 68-3, 23–26); *Bombard v. Fort*

*Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996) (finding plaintiff could not create genuine issue of material fact regarding ability to perform essential job functions, as "confirmed by [plaintiff's] deposition testimony where he states that he was 'unable to work'"). It is difficult to imagine how scheduling adjustments or even additional leave time could have prevented Neal from being placed in "situations" or "around people," thus triggering his disabling conditions.[3] *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996) (holding that plaintiff with stress disorder, anxiety, and depression who stated "she is no longer able to work for [defendant] in any capacity" could not establish she was qualified to perform her job with or without any accommodation); *Paleologos v. Rehab Consultants, Inc.*, 990 F. Supp. 1460 (N.D. Ga. 1998) ("Plaintiff asserts in her deposition that defendant's management style caused her stress reaction, and that attending work and interacting with defendant's management exacerbated her condition. Given this fact, it is difficult to imagine how a six-week leave of absence would have enabled plaintiff to perform the essential functions of attending work, which presumably would have induced a stress reaction as soon as plaintiff resumed her job duties.").

Second, Neal argues Defendants could have "changed [his] duties or tried to assign him another job that Neal could perform with his disability". (Filing No. 69 at 18.) However, this type of change would not constitute a reasonable accommodation. "An employer is not obligated to change the essential functions of a job to accommodate an employee." *Emerson v. N. States Power Co.*, 256 F.3d 506, 514 (7th Cir. 2001); *see Ozlowski v. Henderson*, 237 F.3d 837, 841 (7th Cir.

---

[3]Even if the report of Neal's expert, Dr. Higginbotham, were admissible, it would not have created a triable issue of fact as to whether Neal was a qualified individual under the ADA. The report would only have served to show Neal was unable to perform the essential functions of his job. Dr. Higginbotham opined that "[a]s a firefighter, Mr. Neal would be expected to engage regularly with coworkers, supervisors, and the general public. A person with Mr. Neal's degree of symptoms should not have been working *in any capacity*, including light duty, in my opinion" (Filing No. 69 at 25 (emphasis added)). Dr. Higginbotham also concluded that Neal's mental disability "rendered him unable to carry out his job". (*Id.* at 27.)

2001) ("While it is true an employer may redistribute marginal functions of a job to other employees, an employer is not required to reallocate essential functions 'that the individual who holds the job would have to perform with or without reasonable accommodation, in order to be considered qualified for the position.'" (quoting 29 C.F.R. pt. 1630)); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) ("[A]n employer [is not] obligated to create a 'new' position for the disabled employee."). Neal does not articulate what types of duties or jobs could have enabled him to regularly attend work despite his disability and again offers no evidence that this type of accommodation would have enabled him to do so.

Third, Neal argues he raises a genuine dispute as to whether he "could have performed as a private firefighter if his supervisors had acted in good faith to work with him to reduce the mental stress or illness in the work environment". (Filing No. 69 at 11.) More specifically, he faults the Defendants for doing "nothing to find how they could help Neal reduce his depression, anxiety, stress, etc. at work" and taking "no steps to provide Neal with the recommended follow-up plan" after his treatment at Florida House.  (*Id.* at 10–11.) However, the ADA does not require these types of efforts by employers. "As is implicit from [the ADA's] definition [of 'reasonable accommodation'], an employer's obligation to make 'reasonable accommodation' only extends to job-related adjustments or modifications." *Brookins v. Indianapolis Power & Light Co.*, 90 F. Supp. 2d 993, 1003 (S.D. Ind. 2000). The implementation guidelines of the Equal Employment Opportunity Commission support this conclusion:

> This obligation does not extend to the provision of adjustments of modifications that are primarily for the personal benefit of the individual with a disability. . . . [I]f an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not required to provide.

29 C.F.R. pt. 1630, App. § 1630.9. Defendants had no obligation under the ADA to help Neal manage his anxiety, depression, or PTSD, and they had no obligation to assist Neal in seeking

treatment at Florida House (even though they did) or after Florida House. *Brookins*, 90 F. Supp. 2d at 1004 (concluding employer had no obligation "to schedule an appointment for [plaintiff] to see a psychiatrist who would prescribe medication for his depression and/or general anxiety disorder"). Neal has presented no evidence indicating that any reasonable accommodation would have enabled him to perform the essential functions of his job. *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 478 (7th Cir. 2014) ("[Plaintiff] has not pointed to evidence in the record that there was an accommodation that would allow her to meet this [attendance] requirement."); *Jovanovic*, 201 F.3d at 900.

Defendants have offered evidence that Neal was not "qualified" to perform the essential functions of his job, with or without reasonable accommodation, and Neal has offered no evidence showing otherwise. Summary judgment as to Neal's ADA discrimination claim is **granted**.

### Title I Failure to Accommodate

Under the ADA, an employer must reasonably accommodate the known physical or mental limitations of an otherwise qualified individual unless the accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case of Defendants' failure to accommodate under the ADA, Neal must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011) (quoting *Sears, Roebuck & Co.*, 417 F.3d at 797); *see Equal Emp. Opportunity Comm'n v. AutoZone, Inc.*, 630 F.3d 635, 638 n.1 (7th Cir. 2010) (noting that adverse employment action is not an element of a *prima facie* case of a failure to accommodate). The Court has already determined that Neal was not qualified to perform the essential functions of the job of an IFD firefighter, with or without reasonable accommodation, so he cannot satisfy the first element of his *prima facie* case. *See Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018) (finding

18

plaintiff's claim for failure to accommodate "fail[ed] at the start because he cannot demonstrate that he is a 'qualified individual.'").

Neal nevertheless argues Defendants are liable for their failure to initiate and engage in an interactive process with him to determine an appropriate accommodation. (Filing No. 69 at 17–18.) Defendants correctly note, though, that a failure to engage in the interactive process is not an independent ground for liability. *See Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014) ("Because the interactive process is not an end in itself, it is not sufficient for [an employee] to show that [an employer] failed to engage in an interactive process or that it caused the interactive process to break down."), (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1015–16 (7th Cir. 2000)). Failure to engage in the interactive process is only "actionable if it prevents identification of an appropriate accommodation for a *qualified individual*," which Neal is not. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014) (emphasis added). Summary judgment is **granted** for the Defendants on Neal's ADA failure to accommodate claim.

### Title III Discrimination in Place of Public Accommodation

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privilege, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a); *see* 42 U.S.C. § 12181(7) (containing non-exhaustive list of places of "public accommodation"). The parties dispute whether a fire station is a place of "public accommodation" for purposes of Title III.

The Court need not decide that question here. Neal's Title III claim cannot proceed because Title III "does not cover claims of employment discrimination." *Neisler v. Tuckwell*, 807 F.3d 225, 228 (7th Cir. 2015) (citing 42 U.S.C. § 12182(a); *Brumfield v. City of Chicago*, 735 F.3d 619, 628 (7th Cir. 2013) (concluding that "Title I specifically, comprehensively, and exclusively addresses disability discrimination in employment"); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d

113, 118–19 (3d Cir. 1998) ("[I]t is evident that Congress sought to regulate disability discrimination in the area of employment exclusively through Title I, notwithstanding the broad language of Title III.")). The Court **grants** summary judgment as to Neal's Title III claim.

**B.      Hostile Work Environment Claim**

The Seventh Circuit has confirmed that a plaintiff may bring a claim for a hostile work environment on the basis of disability under Title I of the ADA, reasoning that "Congress wrote the ADA using the language of Title VII, and Title VII recognizes hostile work environment claims." *Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 852 (7th Cir. 2019). A hostile work environment is actionable under Title VII and the ADA because it constitutes discrimination with respect to the "terms, conditions, and privileges of employment." *See, e.g.*, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

However, the ADA only prohibits discrimination against "a *qualified individual* . . . in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (emphasis added). Because Neal was not a "qualified individual" under ADA, he cannot sustain a hostile work environment claim.  Neal also argues in his response brief that his mistreatment by colleagues beginning in 2013 created a hostile work environment. (Filing No. 69 at 19–20.) This argument cannot save Neal's claim. Although the alleged mistreatment may have aggravated—or even caused—Neal's mental disability, there is no evidence in the record to suggest Neal suffered this mistreatment *because of* his disability.[4]   The Court therefore **grants** summary judgment as to Neal's hostile work environment claim.

---

[4] Neal alleges in his Amended Complaint that he was diagnosed with attention deficit disorder ("ADD") (Filing No. 40 at ¶ 45; Filing No. 69 at 17). But he designates no evidence to show that he had ADD, that the IFD knew he had ADD, or that any of his mistreatment at the academy was because of his ADD. Unsupported allegations are not accepted as true so the Court cannot accept these allegations as true. *See* S.D. Ind. L.R. 56-1(e) (A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence.); *James*, 959 F.3d at 307.

**C.**     **Rehabilitation Act Claims**

Neal alleges Defendants violated the Rehabilitation Act by failing to take affirmative steps to accommodate Neal's disability and by discriminating against him on the basis of his disability. Defendants argue the Rehabilitation Act's affirmative action mandate applies only to federal agencies and that Neal's discrimination claim again fails because he cannot show he was "qualified".  Defendants also argue for the first time on reply that the Rehabilitation Act applies only to recipients of federal assistance, and Neal cannot show that Defendants received federal financial assistance.

**1.**     **Affirmative Action**

The Rehabilitation Act imposes an affirmative duty on federal agencies "to structure their procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignment and promotion." *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 306 (5th Cir. 1981) (quoting *Ryan v. Fed. Deposit Ins. Corp.*, 565 F.2d 762, 763 (D.C.Cir. 1977)); 29 U.S.C. § 791(b). Defendants are correct that these affirmative duties are imposed on only federal agencies, not municipalities, so Neal cannot maintain his affirmative action claim against Defendants.

**2.**     **Disability Discrimination**

The Rehabilitation Act protects a "qualified individual with a disability" from discrimination because of that person's disability. 29 U.S.C. § 794(a). The Seventh Circuit has explained that discrimination claims under the Rehabilitation Act "are treated as 'functionally identical' and can be considered together with [ADA] claims." *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 988 (7th Cir. 2020) (citing *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (analyzing ADA and Rehabilitation claims together); *e.g.*, *Lange v. City of Oconto*, 28 F.4h 825, 837–38 (7th Cir. 2022); *Ashby v. Warrick Cnty. Sch. Corp.*, 908 F.3d 225, 230 n.10 (7th Cir. 2018);

*see also Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002) ("This Court looks to the standards applied under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111 *et seq.*, to determine whether a violation of the Rehab Act occurs in the employment context."). The Court has concluded that Neal was not a "qualified individual" under the ADA, so, for the same reason, his disability discrimination claim under the Rehabilitation Act cannot succeed.

The Court **grants** summary judgment as to Neal's Rehabilitation Act claims. The Court need not address Defendants' new argument regarding the receipt of federal funds.

**D.    Section 1983 Claim**

Neal alleges Defendants are liable under Section 1983 for maintaining a policy, custom, or practice that resulted in Neal being denied a reasonable accommodation and terminated in violation of his constitutional rights. Defendants argue that Neal cannot identify any policy, custom, or practice that contributed to a deprivation of constitutional rights and that he may not assert a Section 1983 claim based exclusively on the denial of a reasonable accommodation under the ADA or Rehabilitation Act.

A municipality's liability under Section 1983 must be evaluated under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, "a municipality is not vicariously liable for the constitutional torts of its employees but is answerable only for the consequences of its policies." *Dye v. Wargo*, 253 F.3d 296, 298 (7th Cir. 2001) (citing *Monell*, 436 U.S. at 694). To hold a municipality liable, the plaintiff must prove that the municipality's "*deliberate* conduct . . . was the 'moving force' behind the injury alleged," resulting in a "direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). A plaintiff may satisfy this burden by proving that "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not

officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Altizer v. Retherford*, No. 14-cv-31, 2015 WL 3843668, at \*4 (S.D. Ind. June 22, 2015) (citing *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)).

Neal alleges in his Amended Complaint that Defendants "promulgated, created, maintained, ratified, permitted and encouraged a series of policies, customs, and practices which authorized the systematic denial of reasonable accommodation to employees with disability." (Filing No. 40 at 7, ¶ 39.)  Neal offers no evidence that would support a finding that such a practice or policy existed. The closest Neal comes is the argument in his response brief that Defendants engaged in a practice of "allow[ing] reasonable accommodation to *only* those employees who request such accommodation," falling short of Defendants' "heightened duty to initiate the interactive process" with employees suffering from mental disabilities (Filing No. 69 at 15 (emphasis in original)); *see* 29 C.F.R. § 1630.2(o)(3) (stating employer may need to initiate informal, interactive process with disabled employee to determine reasonable accommodation).

However, "[a]rgument is not evidence upon which to base a denial of summary judgment," *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 361 (7th Cir. 1992).  Neal's vague and unsupported allegations about Defendants' practices are not sufficient to defeat a motion for summary judgment. *See Reed*, 8 F.4th at 578; *Garrison*, 165 F.3d 565 (granting summary judgment for city in sexual harassment case because no evidence existed that city customarily or habitually ignored complaints or that a final policy-making authority chose to ignore plaintiff's complaints).

Further, when a plaintiff claims a municipality acted through a widespread practice, he must allege more than one instance of misconduct; "a series of violations must be presented to lay the premise of deliberate indifference" under *Monell*. *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003). "The plaintiff must introduce evidence demonstrative that the unlawful practice

was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) (quotation marks and citation omitted); *see also Davis v. Carter*, 452 F.3d 686, 695 (7th Cir. 2006) (stating a plaintiff must offer evidence of repeated misconduct, although past misconduct need not have caused injuries). There is no evidence in the record of any other instance in which Defendants either denied a reasonable accommodation to an employee who did not request one but was nevertheless entitled to one or failed to initiate the interactive process with an employee suffering from a mental disability. To the contrary, the evidence shows that once Neal mentioned his disability to Chief Abernathy, Chief Abernathy affirmatively recommended that Neal seek treatment at Florida House, that the IFD granted Neal time off to seek treatment there, and that after Neal returned, Chief Robinson attempted on more than one occasion to set a meeting with Neal about his return to work (Filing No. 68-3 at 27, 37, 47, 49; Filing No. 68-27 at 3, ¶¶ 21–26).

The Defendants also argue Neal cannot sustain his Section 1983 claim because the only unconstitutional act alleged is the denial of a reasonable accommodation under the ADA and Rehabilitation Act (Filing No. 67 at 13). The Seventh Circuit has not yet determined whether a plaintiff is precluded from pursuing a Section 1983 claim based on disability discrimination.[5] The

---

[5] *See cf. Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 281 (7th Cir. 2003) (stating the Seventh Circuit has "consistently declined to find that other similar statutes preclude § 1983 relief when the § 1983 claim is based directly on a constitutional violation, not a statutory one"). There is no consensus among the other circuits as to whether a plaintiff is barred from bringing Section 1983 claims when the basis for the claim is the violation of parallel rights secured by the ADA or Rehabilitation Act. *See Bullington v. Bedford Cnty., Tenn.*, 905 F.3d 467, 472–73 (6th Cir. 2018) (concluding ADA does not preclude Section 1983 claims for disability discrimination); *Williams v. Penn. Human Rels. Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017) ("Title VII and ADA statutory rights cannot be vindicated through § 1983."); *Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012) (concluding ADA precludes Section 1983 claims based on ADA Title I violations); *Grey v. Wilburn*, 270 F.3d 607, 610 (8th Cir. 2001) (holding plaintiff could not pursue Equal Protection claim under Section 1983 that was based on the same facts as ADA claim); *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (analyzing ADA claims and parallel Section 1983 claims of Equal Protection and Due Process clause violations based on same disability discrimination); *Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999) (concluding Rehabilitation Act precluded parallel claims under Section 1983); *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997) (holding ADA and Rehabilitation Act precluded parallel claims under Section 1983).

Court need not answer that question here because Neal's inability to show a policy, custom, or practice is dispositive of his Section 1983 claim. The Court **grants** summary judgment as to Neal's Section 1983 claims.

**E.      State Law Tort Claims**

Neal asserts state law claims against the Defendants for wrongful termination, negligent supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress (Filing No. 40 at 9–12). The Defendants argue Neal failed to timely file a notice of tort claims as required by the ITCA, Ind. Code §§ 34-13-3-0.1–25, so his claims must be dismissed. The Court agrees with the Defendants.

Each of Neal's state law claims is governed by the ITCA. Ind. Code § 34-13-3-1(a); *see Cantrell v. Morris*, 849 N.E.2d 488, 494 (Ind. 2006) (finding wrongful discharge claim governed by ITCA); *Mwangangi v. Nielsen*, 525 F. Supp. 3d 869, 923 (S.D. Ind. 2021) (finding negligent supervision claim governed by ITCA); *City of Anderson v. Weatherford*, 714 N.E.2d 181, 185 (Ind. Ct. App. 1999) (analyzing claim for intentional infliction of emotion distress under ITCA); *O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. Ct. App. 2000) (dismissing claim of negligent infliction of emotional distress under ITCA). *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 648 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) ("Plaintiff has alleged four cases of action under the Indiana Tort Claims Act (ITCA): intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, and wrongful termination.").

Under the ITCA, before a plaintiff files suit against a governmental entity, he must first file a notice with the entity's governing body.  Ind. Code §§ 34-13-3-8, -13.  Importantly, that notice must be filed within one hundred eighty days of the alleged loss.  Ind. Code § 34-13-3-8(a);

(Filing No. 40 at 9–12). Compliance with the ITCA's notice requirement is a legal issue for the court to decide. *See Gregor v. Szarmach*, 706 N.E.2d 240, 241 (Ind. Ct. App. 1999).

Neal concedes he did not serve a tort claim notice on Defendants (Filing No. 68-29 at 2; Filing No. 69 at 20). He argues—without any supporting evidence—that his mental illness rendered him "incapable of understanding the need to file a notice of claims" or "appreciate[ing] the significance of the requirements of ITCA," so dismissing his tort claims would "be harsh and against the interest of justice" (Filing No. 69 at 20). However, neither the ITCA nor Indiana precedent grants courts discretion to excuse an untimely filing. *See Lowe v. N. Ind. Commuter Transp. Dist.*, 177 N.E.3d 796, 801 (Ind. 2021) ("[O]ur substantial-compliance doctrine is clear: substantial compliance is a question of content not timing.") (citing *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989); *City of Indianapolis v. Cox*, 20 N.E.3d 201, 208 n.4 (Ind. Ct. App. 2014)); *See Schrieber v. Lawrence*, No. 02-CV-1319, 2003 WL 1562563, at \*4, \*6 (S.D. Ind. Mar. 4, 2003) (dismissing claim for intentional infliction of emotional distress due to plaintiff's failure to timely file notice under ITCA).

Further, although the ITCA tolls the filing for "incapacitated" plaintiffs, Ind. Code § 34-13-3-9, Neal offers no evidence that he is or was "incapacitated" as defined by the ITCA. Ind. Code § 29-3-1-7.5 (defining incapacity); *see Lett v. State*, 519 N.E.2d 749, 751 (Ind. Ct. App. 1988) ("[A] person is not incompetent under the ITCA merely because that person is depressed or injured and unable to perform all acts regarding his care and property independently without help from others. Rather, incompetency under the ITCA refers to an incapacity that makes it unreasonable to subject the person to the jury to file a notice of claim."); *see also Overton v. Grillo*, 896 N.E.2d 499, 504 (Ind. 2008) ("[T]here is no designated evidence establishing that Mr[s]. Overton was incapacitated [for purposes of filing her lawsuit within the applicable statute of

limitations]. Mrs. Overton's brief asserts that she suffered from 'severe depression, anxiety, sleep deprivation,' and went through chemotherapy and radiation sessions until July 2001. However, this evidence is insufficient as a matter of law to establish an ongoing incapacity.").

Because Neal did not timely file a notice of claims under the ITCA, the Court **grants** summary judgment on Neal's claims for wrongful termination negligent supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants the Indianapolis Fire Department's and the City of Indianapolis' Motion for Summary Judgment (Filing No. 66). Plaintiff Sanjiv Neal's claims are **DISMISSED** on summary judgment, the trial and final pretrial conference are hereby **VACATED**. Final judgment will issue under separate order.

**SO ORDERED**.

Date:   6/10/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

F. Harrison Green
F. HARRISON GREEN CO.
fhgreen@thegreenlawfirm.org

Brandon E. Beeler
OFFICE OF CORPORATION COUNSEL
brandon.beeler@indy.gov